

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00344-CV

## IN THE INTEREST OF J.W., A CHILD

**From the 85th District Court
Brazos County, Texas
Trial Court No. 17-001284-CV-85**

## MEMORANDUM OPINION

On May 1, 2019, this Court issued a Memorandum Opinion affirming the trial court's order of termination. On May 13, 2019, J.W. filed a motion for rehearing, and we requested a response to that motion. After reviewing the motion for rehearing and response thereto, we grant the motion for rehearing. We withdraw our Memorandum Opinion and Judgment issued on May 1, 2019, and substitute the following in their place.

### FACTS

John W. and Gena T. married in February 2016. Gena T. had two children from previous relationships. Her parental rights to one child were previously terminated and the other child lives with his father. John W. did not have any children at the time he

married Gena T. J.W. was born on April 24, 2017, at the home of John W. and Gena T. After his birth, he was taken to the hospital where he was intubated for respiratory problems because he aspirated meconium. Soon after his birth, J.W. tested positive for five controlled substances, and he began experiencing withdrawal symptoms. Gena T. tested positive for opiates and amphetamine. J.W. began treatment for the withdrawal symptoms. He remained in the hospital for almost a month and then he was placed with an unrelated foster family.

## MOTHER'S APPEAL

In presenting this appeal, counsel for Gena T. filed a brief pursuant to *Anders v. California* asserting that she has conducted a review of the record and found no arguable issues to raise on appeal. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

The brief filed meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. Additionally, Gena T.'s attorney advised her that she had filed the brief pursuant to *Anders*, that Gena T. had the right to review the record and file a pro se response on her own behalf, and provided Gena T. with a copy of the record. Although given the opportunity, Gena T. did not file a response with this Court.

The amended order of termination recites that the jury was given the following instruction with respect to Gena T.:

For the parent-child relationship in this case to be terminated with respect to [Gena T.], the mother of the child, [J.W.], it must be proven by clear and convincing evidence that at least one of the following events has occurred:

1. [Gena T.] knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child.
2. [Gena T.] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.
3. [Gena T.] had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of § 161.001 (b) (1) (D) or (E), Texas Family Code.
4. [Gena T.] failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse and neglect of the child.
5. [Gena T.] used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance.

In addition, it must be proven by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the child. Some factors to consider in determining the best interest of the child are:

1. the desires of the child;
2. the emotional and physical needs of the child, now and in the future;
3. the emotional and physical danger to the child, now and in the future;
4. the parenting ability of the individuals seeking custody;
5. the programs available to assist those individuals to promote the best interest of the child;
6. the plans for the child of those individuals or by the agency seeking custody;
7. the stability of the home or proposed placement;

8. the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the acts or omissions of the parent.

The jury found that the parent-child relationship between Gena T. and J.W. should be terminated.

In the *Anders* brief, counsel analyzes the legal and factual sufficiency of the evidence to support termination. Counsel acknowledges that only one statutory ground is necessary to support an order of termination in addition to a finding that termination is in the children's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Counsel further evaluates the legal and factual sufficiency of the evidence to support a finding that termination was in the best interest of the child. Counsel's brief evidences a professional evaluation of the record for error, and we conclude that counsel performed the duties required of an appellate counsel.

Due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2008). *See also In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002).

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of

the statute and also proves that termination of the parent-child relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). We agree with counsel's evaluation that there is clear and convincing evidence to support termination under Section 161.001 for Gena T.

Notwithstanding the sufficiency of the evidence to support termination under section 161.001 (b) (1), we must also find clear and convincing evidence that termination of the parent-child relationship was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (b) (2). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. There is a long-standing non-exhaustive list of factors for a court to consider in deciding the best interest of a child in a termination case. *See Holley*, 544 S.W.2d at 371-72.

We agree with counsel's evaluation that there is clear and convincing evidence under the appropriate legal and factual sufficiency standards for the jury to have determined that termination of the Gena T.'s parent-child relationship was in the best interest of J.W.

Upon receiving a "frivolous appeal" brief, this Court must conduct a full examination of all proceedings to determine whether the case is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 349-50, 102 L. Ed. 2d 300 (1988); *see also In re M.A.R.*, No. 10-10-00237-CV, 2011 Tex. App. LEXIS 3596, at *2 (Tex. App.—Waco May 11,

2011, no pet.) (mem. op.). After our review of the entire record and counsel's brief, we agree with counsel that there are no plausible grounds for appeal. *See Bledsoe v. State*, 178 S.W.3d 824, 827-28 (Tex. Crim. App. 2005).

If Gena T., after consulting with counsel, desires to file a petition for review, counsel is still under a duty to timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief."[1] *See In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016).

**FATHER'S APPEAL**

John W. argues in two issues that the evidence was insufficient to support the jury's predicate parental termination findings under Section 161.001 (b) (1) (D), (E), or (O) of the Texas Family Code and that the evidence was insufficient to support the finding that termination was in the best interest of the child. In another issue, John W. argues that this Court must reverse and remand for a new trial because he objected to the trial court's broad-form submission because there was no evidence to support at least one predicate. Because we find the evidence sufficient to support the jury's predicate parental termination findings under Section 161.001 (b) (1) (D), (E), and (O) of the Texas Family Code, we do not address the broad-form submission issue.

---

[1] We do not address whether counsel's duty requires the filing of a petition for review or a motion for rehearing in the Texas Supreme Court in the absence of the client's professed desire to do so in *Anders* proceedings.

The amended order of termination recites that the jury was given the following instruction with respect to John W.:

> For the parent-child relationship in this case to be terminated with respect to [John W.], the Father of the child, [J.W.], it must be proven by clear and convincing evidence that at least one of the following events has occurred:
>
> 1. [John W.] knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child.
> 2. [John W.] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.
> 3. [John W.] failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse and neglect of the child.
>
> In addition, it must be proven by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the child. Some factors to consider in determining the best interest of the child are:
>
> 1. the desires of the child;
> 2. the emotional and physical needs of the child, now and in the future;
> 3. the emotional and physical danger to the child, now and in the future;
> 4. the parenting ability of the individuals seeking custody;
> 5. the programs available to assist those individuals to promote the best interest of the child;
> 6. the plans for the child of those individuals or by the agency seeking custody;
> 7. the stability of the home or proposed placement;
> 8. the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and
> 9. any excuse for the acts or omissions of the parent.

The jury found that the parent-child relationship between John W. and J.W. should be terminated.

**Sufficiency of the Evidence**

In the first issue, J.W. argues that the evidence is insufficient to support the predicate grounds for termination. In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex .2002)) (emphasis in *J.P.B.*).

> In a factual sufficiency review,
> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably

have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

Section 161.001 (b) (1) (O) of the Texas Family Code provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child

John W. does not challenge that J.W. has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. Therefore we will turn to whether John W. failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of J.W.

The service plan required John W. to:

- maintain a safe and stable home environment
- obtain and maintain a stable and legitimate income
- complete a drug and alcohol assessment and follow recommendations
- contact CPS caseworker at least twice a month and notify CPS within 48 hours of address and/or phone changes

- sign releases of information with service providers in order to allow CPS to access information with service providers
- attend supervised visits with J.W. as approved and scheduled by CPS
- complete a psychological evaluation and follow recommendations
- complete a parenting assessment and follow recommendations
- attend individual counseling and follow recommendations including parenting classes
- live a criminal free lifestyle

John W. argues in his brief and in his motion for rehearing that he complied with the actual terms of the service plan, but that the Department was subjective in determining what the service plan actually required. John W. contends that the concerns in *In the Interest of N.G.*, No. 18-0508, 2019 Tex. LEXIS 465 (May 17, 2019) are applicable to his case. In *Interest of N.G.*, the father complained that the service plan was not specific enough to put him on notice of what was required for compliance. John W. contends that his service plan was specific enough, but the Department relied on things that were not actually part of his service plan to show noncompliance.

Kelly Allen, with the Department of Family and Protective Services, testified that John W. did not maintain a safe and stable home environment as required by the service plan. Allen stated that John W.'s house was extremely cluttered and was unsafe for J.W. The Department introduced photographs of John W.'s house depicting the condition of the house. The photographs show that there is little room to walk in the house and that there are pill bottles, cigarette butts, trash, glass, and other items that would be hazardous for a toddler.

John W. argues that he did maintain stable housing and that the service plan did not require him to bring up his current residence to Department standards. John W. maintains that he did not intend to bring J.W. to his current residence, but rather planned to stay with Gena T.'s sister, sell his house, and then move to Fort Worth. The service plan required John W. to maintain a *safe* and stable home environment. John W. had lived in his home for over thirty years; however, the testimony showed that the home was not safe for a toddler. Although John W. contends that he did not intend to reside at that residence with J.W., the service plan required him to provide a safe and stable home environment. His stated plans to live with a relative and then move to another residence shows that he did not meet that requirement.

Allen testified that John W. failed to maintain contact with the CPS caseworker as required by the service plan. Although John W. attended visits with J.W., he failed to maintain contact with the Department as required. John W. argues that he did not fail to maintain contact with the Department because he went to the Department weekly to visit J.W. However, the service plan required him to contact the CPS caseworker at least twice a month and notify CPS within 48 hours of address and/or phone changes. Attending visitation at the Department is not the same as contacting a caseworker twice a month. Allen testified that when John W. attended visitation Gena T. would not let him speak with the caseworkers and that there was no meaningful contact with the caseworkers.

Allen testified that John W. initially did not attend counseling as required by the service plan. John. W. began attending counseling, but the Department considered this requirement inconclusive or incomplete. Allen stated that the counseling was unsuccessful and that the counseling notes indicated John W. would struggle to be a protective parent. The counseling notes stated that John W. would do anything Gena T. told him to do and that he minimized her substance abuse problems. Allen testified that John W. did not comply with the provisions of the service plan and that termination was appropriate.

Ground O of Section 161.001 (b) (1) does not quantify any particular number of provisions of the family service plan that a parent must fail to achieve in order for the parental rights to be terminated or the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the plan. *See* TEX. FAM. CODE ANN. § 161.001(b) (1) (O) (West Supp. 2018); *In Interest of B.H.R.*, No. 06-17-00081-CV, 2017 WL 5150852, *5 (Tex. App.—Texarkana, November 7, 2017, no pet.). The record shows that although John W. did comply with some of the provisions of the service plan, he did not comply with all of the provisions of the service plan. A finding that John W. failed to comply with the requirements of the family service plan is supported by legally and factually sufficient evidence.

Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the

child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). After this Court issued its opinion, the Texas Supreme Court decided *In the Interest of N.G.*, No. 18-0508, 2019 Tex. LEXIS 465 (May 17, 2019). In *N.G.*, the Court stated that:

> When due process requires the heightened standard for termination of parental rights by clear and convincing evidence, it follows that due process also requires a heightened standard of review of a trial court's finding under section 161.001(b)(1)(D) or (E), even when another ground is sufficient for termination, because of the potential consequences for parental rights to a different child. A parent may be denied the fundamental liberty interest in parenting only after they have been provided due process and due course of law, and terminating parental rights based on a challenged, unreviewed section 161.0001(b)(1)(D) or (E) finding runs afoul of this principle. *See* U.S. CONST. AMEND. XIV, § 1; TEX. CONST. ART. I, § 19. When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.

*In the Interest of N.G.*, 2019 Tex. LEXIS 465 *8. The Court concluded that allowing Section 161.001(b) (1) (D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights. *Id*. at *12. Therefore, we must review the sufficiency of the evidence to support termination under the predicate grounds in Section 161.0001(b) (1) (D) or (E).

Sections 161.001 (b) (1) (D) and (E) both require a finding of endangerment. To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical

or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533.

When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his or her well-being. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App. —Waco 2015, pet. den'd). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *Id*. It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *Id*. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id*. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Id*. Section D permits termination based upon only a single act or omission. *In the Interest of E.M.*, 494 S.W.3d at 222.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id*. Additionally, termination under subsection (E) must be based on more than a single act or omission;

the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Id.* The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Id.*

Because the evidence pertaining to subsections 161.001 (b) (1) (D) and (E) is interrelated, we may conduct a consolidated review. *In Interest of M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App. —Fort Worth 2009, no pet.).

J.W. tested positive at birth for five controlled substances, and he experienced withdrawal symptoms. He was in the hospital for a month before being placed with a foster family. One parent's drug-related endangerment of the child may be imputed to the other parent. *In Interest of F.E.N.*, 542 S.W.3d 752, 764 (Tex. App. —Houston [14 Dist.] 2018, pet. den'd). The record shows that Gena T. used illegal substances while pregnant with J.W. and that John W. was aware of Gena T.'s problems with illegal substances.

Jennifer Smith, with the Department of Family and Protective Services, testified that John W. was untruthful with the Department about Gena T.'s addiction and that John W. was aware of Gena T.'s addiction. Smith further testified that John W. exhibited a:

> pattern of behavior of denial about the extent and the issues that [Gena T.] has even with his knowledge of her addiction issues and her mental health issues, the fact that she refuses to get help, the fact that there's a criminal element that's around who's involved with drugs, and the fact that he can't seem to protect himself much less a child from the pattern of behaviors that she brings and he's not willing to address those. I believe that it definitely shows a pattern that he is unable to be protective of his child.

Smith also testified that John W. stated he did not feel Gena T. posed a danger to J.W. and that he was only getting a divorce so he could get custody of J.W.

John W.'s conduct shows that he was aware of the endangering behavior of Gena T.'s addiction. John W.'s conduct further shows that he was unable to protect J.W. from the endangering environment. The evidence is legally and factually sufficient to support termination under the predicate grounds in Section 161.0001(b) (1) (D) and (E).

Texas case law specifically authorizes broad form submission in parental rights cases. *See Tex. Department of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). When multiple grounds for termination are sought and the trial court submits the issue using a broad-form question, we must uphold the jury's findings if any of the grounds for termination support the jury's finding. *In re J.T.G.*, 121 S.W.3d 117, 128 (Tex. App. —Fort Worth 2003, no pet.). Because we find that the evidence is sufficient to support termination on all three predicate grounds, we overrule John W.'s first issue on appeal.

**Best Interest**

In the third issue, John W. complains that the evidence is insufficient to support the jury's finding that termination is in the best interest of the child. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these

individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.—Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

J.W. was under two years-old at the time of trial. He had been placed with the foster family since his release from the hospital. The record shows that J.W.'s physical and emotional needs are being met by the foster family. The foster family plans to adopt J.W. in the event the parental rights of John W. and Gena T. are terminated. The foster parents have received training and have a family support system.

John W. was seventy years-old at the time of trial and J.W. is his first child. John W. testified that he planned to live with Gena T.'s sister for a while if he is given custody of J.W. so that she can help him. John W. then plans to move to the Dallas/Fort Worth area where he has family who can help provide a support system for J.W. The jury heard evidence that John W. is not able to protect J.W. from Gena T. and that he allows Gena T. to control him. The jury heard evidence that after becoming involved with Gena T., John

W. allowed persons to live in his home who abused drugs. John W. was also arrested for domestic violence after an incident with Gena T. and an acquaintance of hers. Although John W. and Gena T. both testified that they planned to divorce, the jury heard testimony that the divorce was in name only so that John W. could obtain custody of J. W. We find that the evidence is legally and factually sufficient to support the jury's finding that termination is in the best interest of the child. We overrule the third issue.

**Broad-Form Submission**

In the second issue, John W. argues that "if there is evidence to support the jury's predicate finding under one ground, the Court must nonetheless reverse and remand for a new trial, as Father objected to the trial court's broad-form submission because there was no evidence to support at least one predicate." Because we find that the evidence is sufficient to support termination under all three predicate grounds, we need not address John W.'s second issue. TEX. R. APP. P. 47.1.

CONCLUSION

We affirm the trial court's judgment.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Motion granted; Affirmed
Opinion delivered and filed October 9, 2019
[CV06]

